UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CARL S.,<br>    Plaintiff<br>v.<br>NANCY A. BERRYHILL, Acting Commissioner of Social Security,<br>    Defendant. | Case No. 5:17-cv-02308-GJS<br><br>**MEMORANDUM OPINION AND ORDER** |

## I. PROCEDURAL HISTORY

Plaintiff[1] filed a complaint seeking review of Defendant Commissioner of Social Security's ("Commissioner") denial of his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). The parties filed consents to proceed before the undersigned United States Magistrate Judge [Dkts. 11, 12] and briefs addressing disputed issues in the case [Dkt. 18 ("Pltf.'s Br."), Dkt. 21 ("Def.'s Br."), and Dkt. 22 ("Pltf.'s Reply")]. The Court has taken

---

[1] Plaintiff's name has been partially redacted in compliance with Fed. R. Civ. P. 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

the parties' briefing under submission without oral argument. For the reasons discussed below, the Court finds that the Commissioner's decision should be remanded for further proceedings.

## II. ADMINISTRATIVE DECISION UNDER REVIEW

On January 6, 2014, Plaintiff filed an application for DIB and on January 16, 2014, Plaintiff filed an application for SSI, both alleging that he became disabled as of June 1, 2013. [Dkt. 15, Administrative Record ("AR") 14, 179-82, 183-88.] The Commissioner denied his initial claims for benefits on June 11, 2014 and upon reconsideration on October 22, 2014. [AR 14, 73-74, 103-04.] On October 14, 2016, a hearing was held before Administrative Law Judge ("ALJ") Norman Bennett. [AR 35-50.] On December 23, 2016, the ALJ issued a decision denying Plaintiff's request for benefits. [AR 17-35.]

Applying the five-step sequential evaluation process, the ALJ found that Plaintiff was not disabled. *See* 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).[2] At step one, the ALJ concluded that Plaintiff has not engaged in substantial gainful activity since his alleged onset date of June 1, 2013, and that his date last insured was December 31, 2014. [AR 16 (citing 20 C.F.R. §§ 404.1571, 416.971).] At step two, the ALJ found that Plaintiff suffered from the following severe impairments: lumbar spine degenerative disc disease; headaches; hypertension; status post left knee surgery; status post heart attack; and seizure disorder. [AR 16 (citing 20

---

[2] To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry. 20 C.F.R. §§ 404.1520, 416.920. The steps are as follows: (1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two; (2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three; (3) Does the claimant's impairment meet or equal the requirements of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four; (4) Is the claimant capable of performing her past work? If so, the claimant is found not disabled. If not, proceed to step five; (5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled. 20 C.F.R. §§ 404.1520(b)-(g)(1), 416.920(b)-(g)(1).

C.F.R. §§ 404.1520(c), 416.920(c)).] Next, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. [AR 18 (citing 20 C.F.R. Part 404, Subpart P, Appendix 1; 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, 416.926).]

The ALJ found that Plaintiff had the following residual functional capacity ("RFC"):

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except lifting and/or carrying 20 pounds occasionally and 10 pounds frequently; standing and/or walking six hours out of an eight-hour workday; sitting six hours out of an eight-hour workday; no working at heights or around dangerous moving machinery; and occasional postural activities, except no climbing ladders, ropes, or scaffolds.

[*Id.*] Applying this RFC, the ALJ found that Plaintiff was able to perform his past relevant work as a security guard and as a president and CEO as generally performed, and, thus, is not disabled. [AR 23-24.]

The Appeals Council denied review on September 26, 2017. [AR 1-5.] This action followed.

### III.  GOVERNING STANDARD

Under 42 U.S.C. § 405(g), this Court reverses only if the Commissioner's "decision was not supported by substantial evidence in the record as a whole or if the [Commissioner] applied the wrong legal standard." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Even if Plaintiff shows the Commissioner committed legal error, "[r]eversal on account of error is not automatic, but requires a determination of prejudice." *Ludwig v. Astrue,* 681 F.3d 1047, 1054 (9th Cir. 2012). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Molina,* 674 F.3d at 1111 (citing *Shinseki v. Sanders,* 556 U.S. 396, 409 (2009)). And "[w]here harmfulness of the error is not

apparent from the circumstances, the party seeking reversal must explain how the error caused harm." *McLeod v. Astrue,* 640 F.3d 881, 887 (9th Cir. 2011).

## IV. DISCUSSION

Plaintiff contends that the ALJ failed to evaluate properly the opinion of Plaintiff's treating physician, Dr. Brent Pratley, M.D., made in disability statements on nine occasions between 2014 and 2016. [Pltf.'s Br. at 4-9; AR 22.] Specifically, Plaintiff contends the ALJ improperly rejected Dr. Pratley's opinion that Plaintiff was limited to lifting no more than 15 pounds, with no bending, stooping, or kneeling, and no excessive gripping or grasping with the left arm. [Pltf.'s Br. at 9.] The Commissioner contends that the ALJ properly evaluated Dr. Pratley's opinion by determining that it was inconsistent with the weight of the medical evidence. [Def.'s Br. at 5.]

### A. Dr. Pratley's Opinion

Dr. Pratley became Plaintiff's primary treating physician in relation to an occupational injury pursuant to the California Labor Code Sections 4600 and 4601. [AR 370.] Between February 2014 and July 2016, Dr. Pratley drafted fifteen reports related to his treatment of Plaintiff on fourteen occasions and his review of MRI results.[3] [AR 370-77 (February 2, 2014), 400-02 (May 7, 2014), 418-21 (July 16, 2014), 426-28 (August 13, 2014), 435-36 (August 27, 2014) (reviewed MRI results, did not meet with Plaintiff), 776-79 (July 21, 2016), 781-83 (April 14, 2016), 785-89 (February 3, 2016), 792-94 (December 28, 2015), 797-800 (November 30, 2015), 814-17 (July 2, 2017), 820-24 (May 7, 2015), 826-29 (March 2, 2015), 831-34

---

[3] Eight of these records were signed by physician's assistants "for Dr. Brent Pratley" and it is unclear whether the physician's assistants conducted the treatment or simply signed the report on Dr. Pratley's behalf. [*See* AR 776-79, 781-73, 785-89, 792-94, 797-800, 820-24, 826-29, 831-34.] However, the ALJ and Plaintiff treat these records as containing Dr. Pratley's treatment notes and opinions and the Commissioner does not object; therefore, the Court therefore also treats them as such. [AR 22; Pltf.'s Br. 6-9; Def.'s Br. at 5-6.]

4

(January 5, 2015), 836-38 (November 5, 2014).]

In each of these reports, Dr. Pratley consistently made the following objective findings in his physical examinations of Plaintiff's lumbar spine and back: Plaintiff has an antalgic limp; +3 to +4 spasm and tenderness to the bilateral lumbar paraspinal muscles from T10 to S1 and multifidus; a trigger point to the bilateral piriformis muscles; Kemp's test, straight leg raise test, Yeoman's test, and Braggard's test were all positive bilaterally; right patellar flex and the right Achilles reflex were decreased; and the L5 dermatome and the S1 dermatome were both decreased on the right to light touch. [AR 372, 400, 418, 426, 776-77, 781-82, 785-86, 792, 797, 814, 820, 826, 831, 836.] Dr. Pratley consistently reporting the following objective findings with regard to his examination of Plaintiff's knees: +3 spasm and tenderness to the right quadriceps muscles, vastus medialis muscles and anterior joint lines; +2 to +3 spasm and tenderness to the left quadriceps muscles, vastus medialis muscles, and anterior joint lines; and Valgus test, Varus test, McMurray's test, and Clarke's test were all positive bilaterally. [AR 373, 401, 419, 427, 777, 782, 786, 793, 798, 815, 821, 827, 832, 837.] Dr. Pratley also made findings with regards to Plaintiff's elbows which generally reflected +3 spasm and tenderness to the left lateral and Cozen's test positive on the left [AR 372-73, 400-01, 419-20, 427, 782, 786, 793, 798, 815, 821, 827, 832, 837], but once noted +4 spasm to the right medial epicondyle and Cozen's test positive on the left. [AR 777.]

With the exception of the record regarding Plaintiff's August 2014 MRI, Dr. Pratley also issued opinions on Plaintiff's ability to work in each of Plaintiff's treatment records. On five occasions between February and November 2014, Dr. Pratley opined Plaintiff was "Temporarily Totally Disabled" for various periods.[4]

---

[4] The ALJ rejected evidence of this opinion on the grounds that it has no probative value and is irrelevant because "'temporarily totally disabled' is a term of art in workers' compensation law

5

[AR 374, 402, 420, 428, 838]. Thereafter on nine occasions, Dr. Pratley opined Plaintiff was able to work with the following restrictions: "No lifting more than 15 pounds. No bending, stooping, or kneeling. No excessive gripping or grasping with the left arm." [AR 778, 783, 789, 794, 799, 817, 823, 828, 834.]

The ALJ gave Dr. Pratley's opinion regarding Plaintiff's restrictions "little weight" because it was not consistent with the totality of the medical evidence of record. [AR 22.] In support of this determination, the ALJ discussed evidence related to Plaintiff's cerebral vascular accidents, treatment for seizures, and cholesterol. [*Id.*] The ALJ repeated his prior statements, without further explication, that "diagnostic testing throughout the record was consistent [with] the findings herein including moderate lumbar spine findings," and that "physical examination throughout the record were consistent with the findings herein." [AR 21-22.] The ALJ supported his determination by pointing to Plaintiff's "activities of daily living, personal care, and social interactions" as noted in his psychiatric examination, which included "adequate self-care skills of dressing, bathing, eating, toileting, and safety precautions," and that Plaintiff was "capable of doing shopping" and his "hobbies included plastic model cars." [AR 22-23.]

In contrast, the ALJ gave "significant weight to the opinions of the orthopedic

---

that is not determinative under the criteria for a finding of disability pursuant to the Social Security Act." [AR 22.] The Court does not review the ALJ's decision to the extent he rejected the conclusion that Plaintiff was "Temporarily Totally Disabled" because Plaintiff does not challenge this portion of the ALJ decision. [*See* Pltf.'s Br. at 9 (challenging only the ALJ's rejection of the opinion that Plaintiff was "limited to lifting no more than 15 pounds, no bending, stooping, or kneeling; and no excessive gripping or grasping with the left arm")]; *see also Frost v. Berryhill*, 727 Fed. Appx. 291, 295 (9th Cir. 2018) (finding that summarizing medical records without identifying an error was "underdeveloped argument" the Court need not address); *Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929-30 (9th Cir. 2003) (holding that the court cannot "manufacture arguments for appellant" and will review only "issues which are argued specifically and distinctly").

consultative examiner, and the State agency physical medical consultants," which the ALJ found to be "generally consistent in that they all assess [Plaintiff] as being able to perform a range of work at the light exertional level with some differences in the degree of specific function-by-function limitations." [AR 23.] The ALJ stated that he "adopted those specific restrictions on a function-by-function basis that are best supported by the objective evidence as a whole." [*Id.*] The ALJ supported this determination by repeating, verbatim (down to the typographical errors), the exact list of evidence he used to support his determination as that Dr. Pratley's opinion was not supported. [AR 22-23.]

**B.  Analysis**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine, but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining physicians). *See* 20 C.F.R. §§ 404.1502, 404.1527; *see also Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). In general, the opinion of a treating or examining physician is entitled to greater weight than that of a non-examining physician. *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014). To reject the uncontradicted opinion of a treating physician, the ALJ must provide clear and convincing reasons. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Even where a treating physician's opinion is contradicted by another doctor's opinion, an ALJ may not reject the opinion without "specific and legitimate reasons" that are supported by substantial evidence in the record. *Id.* at 830-31; *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014); *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). "The ALJ can 'meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)). Here, Dr.

Pratley's opinion was contradicted by the orthopedic consultative examiner's opinion that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently, and bend, kneel, stoop, crawl and kneel occasionally and the state agency physicians' opinions that Plaintiff can lift and carry 20 pounds occasionally and 10 pounds frequently with no postural limitations. [AR 58-59, 69-70, 85-86, 99-100, 301.]

### 1. The ALJ Failed to Properly Consider Dr. Pratley's Treating Opinion

The ALJ first failed to consider the appropriate factors when he declined to give controlling weight to Dr. Pratley's opinion as Plaintiff's treating physician. Though the ALJ found Dr. Pratley's repeated opinion regarding Plaintiff's restrictions was "not consistent with the entire evidence of record," the ALJ failed to account for the length of the treatment relationship and frequency of examination, the nature and extent of the treatment relationship, or Dr. Pratley's specialization as an orthopedic surgeon. 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6); *see Trevizo v. Berryhill*, 871 F.3d, 664, 676 (9th Cir. 2017) (finding ALJ's failure to address length of treating relationship, frequency of examination, nature and extent of treatment relationship, or supportability of opinion was reversible legal error).

The ALJ did not acknowledge Dr. Pratley's treatment relationship in anyway, and in fact did not even acknowledge that Dr. Pratley was a treating physician anywhere in the decision. [*See* AR 21-22.] The record indicates Dr. Pratley treated Plaintiff on fourteen occasions over a period of almost two and a half years. [AR 370-77, 400-02, 418-21, 426-28, 776-79, 781-83, 785-89, 792-94, 797-800, 814-17, 820-24, 826-29, 831-34, 836-38.] The ALJ does cite to the nine dates on which Dr. Pratley issued his opinion and state that diagnostic testing and physical examination throughout the record were "consistent with the findings herein" "including moderate lumbar spine findings." [AR 22.] However, nowhere in the decision does the ALJ discuss that Dr. Pratley has been Plaintiff's treating physician specifically

8

for his back, knees, and elbows for almost two and a half years, during which time he conducted fourteen physical examinations, each of which included carrying out multiple tests on Plaintiff's back, knees, and elbows. [*See* AR 19-23]; *see* 20 CFR § 404.1527(c)(2)(i) ("Generally, the longer a treating source has treated you and the more times you have been seen by a treating source, the more weight we will give to the source's medical opinion."); 20 C.F.R. § 404.1527(c)(2)(ii) ("Generally, the more knowledge a treating source has about your impairment(s) the more weight we will give to the source's medical opinion. We will look at the treatment the source has provided and at the kinds and extent of examinations and testing the source has performed or ordered from specialists and independent laboratories.").

The record also reflects that Dr. Pratley's area of specialization is as an orthopedic surgeon, but the ALJ did not acknowledge this specialization, let alone apply it as a factor in rejecting a treating source's opinion. [AR 22]; 20 C.F.R. § 1527(c)(5) ("We generally give more weight to the medical opinion of a specialist about medical issues related to his or her area of specialty than to the medical opinion of a source who is not a specialist."). The ALJ therefore erred in relying solely on the basis that Dr. Pratley's opinion was "not consistent with the entire record" without addressing the other factors required when refusing to give the treating physician's opinion controlling weight. 20 C.F.R. § 1527(c)(2) ("When we do not give the treating source's medical opinion controlling weight, we apply the factors listed in paragraphs (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the medical opinion."). This alone constitutes reversible error. *See Trevizo*, 871 F.3d at 676.

### 2. The ALJ Failed to Present "Specific and Legitimate" Reasons for Giving "Little Weight" to Dr. Pratley's Opinion

The reasons the ALJ did present to reject the Dr. Pratley's opinion were not specific and legitimate. The ALJ presented one reason for rejecting Dr. Pratley's

opinion, that it was "not consistent with the entire evidence of record," and supported this with (1) evidence regarding Plaintiff's strokes, seizures, and cholesterol, (2) the ALJ's own conclusory statement that Plaintiff's diagnostic testing and physical examinations were "consistent with the findings herein" "including moderate lumbar spine findings," and (3) evidence of Plaintiff's activities of daily living. [AR 22-23.]

As an initial matter, the Commissioner argues that the ALJ was justified in rejecting Dr. Pratley's opinion on the basis that it was grounded in Plaintiff's discredited subjective complaints and because the orthopedic consultative examiner's and state agency physicians' opinions constituted substantial evidence. [Def.'s Br. at 3-5.] Plaintiff, on the other hand, argues that Dr. Pratley's opinion was based on examinations rather than subjective complaints and that the orthopedic consultative examiner's and state agency physicians' opinions do not constitute substantial evidence. [Plft's Reply at 3-5.] However, the Court need not address these arguments because the ALJ did not mention either of these grounds as reasons for rejecting Dr. Pratley's opinion, and so the Court cannot consider them. [AR 22]; *Garrison*, 759 F.3d at 1010 ("We review only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely.").

The ALJ begins his analysis of Dr. Pratley's opinion by citing evidence that Plaintiff's diagnostic testing related to three cerebral vascular accidents were negative for stroke, that he responded to hospital treatment and was discharged in stable condition, that his cholesterol and seizures were under control, and that he no longer had a driving restriction related to seizures. [AR 22.] While the ALJ is correct that this evidence does not support Dr. Pratley's opinion regarding the physical restrictions at issue here (the limitation on lifting, for example), Dr. Pratley was not Plaintiff's treating physician (or a specialist) with regard to cerebral vascular accidents, cholesterol, or stroke. Thus, while this statement of the ALJ is

true, it does not contradict – or address – the evidence of record that supports Dr. Pratley's opinion regarding Plaintiff's limitations. For example, Dr. Pratley's examinations consistently showed that Plaintiff had an antalgic limp, +3 to +4 spasm and tenderness to the bilateral lumbar paraspinal muscles from T10 to S1 and multifidus, positive bilateral results for Kemp's test, straight leg raise test, Yeoman's test, and Braggard's test, and that Plaintiff's L5 dermatome and the S1 dermatome were both decreased on the right to light touch. [AR 372, 400, 418, 426, 776-77, 781-82, 785-86, 792, 797, 814, 820, 826, 831, 836]; *see Holohan v. Massanari*, 246 F.3d 1195, 1207 (9th Cir. 2001) (finding ALJ's basis for rejecting treating physician's opinion was not supported by substantial evidence because the ALJ "selectively relied on some entries . . . and ignored the many others that indicated continued, severe impairment"). The ALJ's rejection of Dr. Pratley's opinion on the ground that it was not supported by Plaintiff's cerebral vascular, cholesterol, and seizure history was therefore not a specific and legitimate reason supported by substantial evidence.

The ALJ's second reason for rejecting Dr. Pratley's opinion was the ALJ's conclusory statement that Plaintiff's diagnostic testing and physical examinations were "consistent with the findings herein" "including moderate lumbar spine findings." [AR 22.] Although the ALJ did summarize the medical evidence of record elsewhere in his decision [AR21-22], he did not explain how and why he interpreted that evidence, and how or why his [the AlJ's] interpretation contradicted Dr. Pratley's opinion. [AR 22]. This alone constituted error because the ALJ failed to "set forth his own interpretations and explain why they, rather than the doctors', are correct." *See Embrey v. Bowen*, 849 F.2d 418, 421-422 (9th Cir. 1988).

Moreover, much of the ALJ's discussion of medical evidence contained no analysis. With regards to diagnostic testing, the ALJ summarized evidence by listing verbatim the results of six tests. [AR 21.] The ALJ stated that these were "consistent [with] the findings herein including moderate lumbar spine findings,"

11

but the ALJ provided no analysis of how these results impacted Plaintiff's physical condition. [AR 21.] Similarly, the ALJ described two physical examinations in the record as "generally unremarkable" and then quoted nearly verbatim, including a typographical error, Dr. Pratley's July 21, 2016 objective findings from a physical examination of Plaintiff. [AR 22, 776-77.] The ALJ then stated that "previous physical examinations noted similar findings." [*Id.*] Again, the ALJ stated that these were "consistent with the findings herein" without providing any analysis or determination as to how these examination findings impact Plaintiff's ability to work. [*Id.*] This fails to meet the ALJ's burden of "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989) (*quoting Cotton v. Bowen*, 799 F.2d 1403, 1408 (9th Cir. 1986)).

The ALJ's final reason for discounting Dr. Pratley's opinion is that it was purportedly inconsistent with Plaintiff's activities of "daily living, personal care, and social interactions." Plaintiff's activities of daily living included, dressing, bathing, eating, toileting, safety precautions, shopping, and his single hobby, plastic model cars. [AR 22-23.] The ALJ failed identify which aspects of Plaintiff's activities were inconsistent with Dr. Pratley's opinion. *See Jones v. Astrue*, 503 F. App'x 516, 517 (9th Cir. 2012) (finding error where an ALJ rejected a treating physician's report on the ground that "it is unsupported by objective findings and is inconsistent with the claimant's own reports of her activities," because it was not clear what specifically made the record insufficient to support the opinion).

Plaintiff's admitted activities included shopping in stores once per month, with help, and otherwise shopping by mail and by computer [AR 209, 236, 246 (Plaintiff's roommate confirming that Plaintiff shops once per month); 439 (psychiatric evaluation confirming Plaintiff does not go places by himself)], dressing with difficulty [AR 234 (describing difficulty with pants and shoes)], bathing [*Id.*], and numbness when sitting on a toilet [*Id.*] The ALJ does not provide

12

any reason why these activities are inconsistent with Dr. Pratley's limitations as to Plaintiff's inability to lift more than 15 pounds, bend, stop, kneel, or grip or grasp with the left arm in the context of a work environment. [See AR 22.] The ALJ relies on Plaintiff's September 30, 2014 psychiatric evaluation to support his rejection of Dr. Pratley's physical limitations, but is unclear to what extent this evaluation addressed Plaintiff's physical ability versus mental ability to complete these tasks. [*See* AR 22, 439.]

It is the ALJ's responsibility to further develop the record with regards to Plaintiff's daily activities if the ALJ suspects these may undermine the treating physician's opinion. *See Trevizo*, 871 F.3d at 676 ("The ALJ did not develop a record regarding the extent to which and the frequency with which Trevizo picked up the children, played with them, bathed them, ran after them, or did any other tasks that might undermine her claimed limitations. . . ."). Accordingly, the ALJ's finding that Plaintiff's daily activities conflicted with the Dr. Pratley's opinion was neither adequately explained nor supported by substantial evidence in the record and, therefore, was not a specific and legitimate reason for discounting the opinion.

Because the ALJ failed to assess the necessary factors and to give specific and legitimate reasons for rejecting Dr. Pratley's opinion, this is legal error.

**C.     Harmless Error**

Where "an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency." *Treichler v. Comm'r of Social Security Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014). The Court has the discretion to credit as true improperly rejected evidence and remand for payment of benefits where the following three factors are satisfied: (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to

find the claimant disabled on remand. *See Garrison*, 759 F.3d at 1020; *see also Treichler*, 775 F.3d at 1100-01.

Here, the record is unclear whether, if Dr. Pratley's opinion were credited as true, Plaintiff would be entitled to benefits. The ALJ presented only one hypothetical to the Vocational Expert at the hearing which was the RFC the ALJ ultimately adopted. [AR 47.] Although Plaintiff's attorney presented four other hypotheticals to the Vocational Expert, none reflected the lifting, postural, or gripping/grasping limitations in Dr. Pratley's opinion. [AR 47-49 (presenting hypotheticals involving use of a cane, unscheduled breaks, absences from work, and a restriction to simple and repetitive tasks).] Therefore, even if Dr. Pratley's limitations were adopted, it is unclear whether Plaintiff could perform, for example, his prior work as a president and CEO. Therefore, the record has not been fully developed and remand for further proceedings is appropriate. *See Garrison*, 759 F.3d at 1020; *Dominguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2016) (remand for further proceedings is appropriate when the record is not "fully developed").

## V. CONCLUSION

For all of the foregoing reasons, **IT IS ORDERED** that:

(1) the decision of the Commissioner is REVERSED and this matter REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Memorandum Opinion and Order; and

(2) Judgment be entered in favor of Plaintiff.

**IT IS SO ORDERED.**

DATED: February 5, 2018

_____
GAIL J. STANDISH
UNITED STATES MAGISTRATE JUDGE